**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANDRE AL-TREAVES WILLIAMS-EL,

      Petitioner,                    Civil No. 05-CV-70616-DT
                                      HONORABLE PAUL D. BORMAN
v.                                  UNITED STATES DISTRICT JUDGE

BARBARA BOUCHARD,

      Respondent,
_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

      Andre Al-Treaves Williams-El, ("Petitioner"), presently confined at the Michigan Reformatory in Ionia, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for kidnapping, M.C.L.A. 750.349; assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; and being a third felony habitual offender, M.C.L.A. 769.11. [1] For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

---

    [1] When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Alger Maximum Correctional Facility, but has since been transferred to the Michigan Reformatory. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is Carmen Palmer, the warden of the Michigan Reformatory, the current location of petitioner. However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker,* No. 2007 WL 2225887, * 1, n. 1 (E.D. Mich. August 1, 2007).

## I.  BACKGROUND

Petitioner was convicted of the above charges following a jury trial in the Lenawee County Circuit Court.  Petitioner was acquitted of first-degree criminal sexual conduct and assault with intent to commit murder.

The prosecution's theory was that on December 21, 2001, petitioner, Eric Cooper, Maywonn Andrews and to a lesser extent, Jason Elmore, beat and sodomized Michael Garcia, while holding him captive in the basement of a house in Adrian, Michigan.

Michael Garcia testified that he went to 518 Oak Street in Adrian, Michigan with Jacob Rosas and some other people that night.  Garcia recalled that John Madison, Jason Elmore and Erie Cooper were at the house.  Garcia believed that Elmore had "jumped" him on prior occasions.  Garcia testified that petitioner was present at the house, but did not think anything happened between them.  Garcia's next recollection was being at the University of Michigan Hospital a week later, where he underwent surgery.

Jason Elmore testified that he went to 518 Oak Street in Adrian, Michigan with John Madison and Jason Lindsey, because they heard there was a party at the location.  Petitioner, Cooper, Andrews and Rosita Inclan were there.  Sara Beltran, Rosas, Garcia and several others arrived later.  Sometime later, Elmore heard Garcia say he wanted to go and get a gun and shoot the "niggers" in the house.  Garcia went into the kitchen, where Sara Beltran told him to "chill out" because he was drunk.  Elmore testified that petitioner, who was in the kitchen, "just flipped out," and went into a bedroom and got a gun.  From his seat in the living room, Elmore looked into the kitchen and observed petitioner return to the kitchen and hit Garcia across the face with the gun, which caused Garcia to fall to the floor.  Andrews, Cooper and petitioner then began

2

punching and kicking Garcia.  Petitioner kicked Garcia four or five times in the ribs.  Garcia appeared unconscious.  Petitioner then fired his gun one time, into the floor, approximately fifteen inches in front of Garcia's head.  Elmore denied that he himself ever assaulted Garcia, even though the prosecutor in his opening statement had stated that Elmore had participated in the initial beating of Garcia in the kitchen.

Elmore initially testified that Andrews ordered the others to take Garcia to the basement, but when questioned further by the prosecutor, Elmore stated that petitioner ordered the other men to take Garcia to the basement.  Cooper dragged Garcia to the basement, and petitioner and Andrews went down there as well.  Elmore denied going down into the basement.  Elmore testified that he heard the sounds of a beating coming from downstairs, which lasted about ½ hour.  Throughout this time period, petitioner, Andrews, and Cooper would come upstairs from the basement and then go back down.  Petitioner came up from the basement first and said that no one in the house was to leave.  Cooper later came upstairs and informed the others that he had stuck a broomstick in Garcia's anus.  Cooper also said they were taking turns hitting Garcia across the back with the broom handle.  Andrews came up stairs and grabbed a beer bottle.  After Elmore heard more of the same sounds from the basement, petitioner, Andrews, and Cooper came upstairs.  Petitioner handed the gun to Andrews and ordered the others to make Garcia take a shower.  Petitioner went to the store.  Garcia was gone by the time petitioner returned home.  Elmore estimated that Garcia was down in the basement for about an hour.

Elmore acknowledged that he was charged with the same charge as petitioner had been, had testified at the preliminary examination, and still faced a charge of attempted murder.  Elmore, however, testified that he did not receive any promise of leniency from the prosecutor in

3

exchange for his testimony.  Elmore admitted that he never called the police or attempted to help

Garcia in any way.  When asked if he intended to go to trial, Elmore was evasive, and stated, "1

don't even know."

Sara Beltran testified that she went to the house in Jacob Rosas' van, with Garcia and

several other persons.  When they arrived, petitioner, Cooper, Andrews, Elmore, John Madison,

Marcus Newsom, and Inclan were there.  Petitioner went to the store with Rosas and returned.

Beltran testified that a "misunderstanding" arose while she and Garcia were talking in the dining

room.  Later, when Beltran was in the kitchen, Garcia came and complained that everyone was

looking at him and talking about him.  Garcia informed Beltran that he was going to go home

and get a gun and shoot someone at the house.  Beltran testified that petitioner came into the

kitchen and "struck or clubbed" Garcia with a firearm one time across the face and side of the

head.  Garcia fell to the kitchen floor.  Beltran testified that petitioner discharged the gun into the

kitchen floor near Garcia.  Petitioner, Cooper, Andrews, and Elmore then began to kick and hit

him.  Beltran left the kitchen during the fight.  Beltran testified that she could "hear" the fracas

from where she was in the dining room, but could not see it.

Beltran testified that Elmore removed himself from the fray as the fight spilled into the

hallway. Beltran indicated that petitioner and the other men took Garcia to the basement.

Beltran testified that petitioner, Andrews, and Cooper came upstairs from the basement at some

point.  Andrews and Cooper told everyone in the house not to leave.  Andrews went back

downstairs to the basement with a broom in his hand.  Beltran looked into the basement from the

top of the stairs and witnessed Garcia on the floor, naked, shaking, and with blood underneath

him.  Beltran observed Andrews stick part of the broom handle into Garcia's rectum.  Although

4

she testified that petitioner and Cooper were not in the basement at that point, she later testified she did not remember where they were. Andrews later came upstairs and got a beer bottle. A couple of people told Andrews not to do that. When petitioner's girlfriend asked petitioner to stop this, petitioner told Andrews not to do this. Andrews laughed, said he was going to use the beer bottle on Garcia, and went back downstairs. In her statement to the police, Beltran told them that she had seen Andrews put the bottle up Garcia's rectum, but at trial could not remember seeing it. Petitioner was in the dining room, and Cooper was still upstairs as well at this point. Beltran never saw either of them with the broom or bottle. After about 45 seconds, Andrews came back upstairs. He and Cooper washed blood off themselves, and petitioner took off his shirt. Garcia came up about a half an hour to 45 minutes later, but refused to take a shower. Garcia left about 15 or 20 minutes later, exiting the house dressed in sweat pants, shirtless and barefoot. Petitioner and Andrews told the others that they had better not say anything to anyone.

John Madison testified that he went to the party with Elmore, Newsom, Lindsey, and Cooper. While Madison was in the living room, he heard the sound of wrestling coming from the kitchen. Madison observed petitioner hit Garcia on top of the head with a gun. When Garcia fell to the floor, Cooper and Andrews began hitting and kicking him. Petitioner fired one shot, which hit the floor about 5-6 feet from Garcia. Madison went back into the living room to get his coat. Madison heard the men order Garcia to go down the basement, and when Garcia did not respond, someone threw him down the stairs. Madison hear a commotion from downstairs. Madison testified that petitioner came up from the basement after about one minute. Cooper then came up, and said he "saw'm jammin a broomstick in his butt." Petitioner left. Garcia came

5

up from the basement, bleeding from his mouth, barefoot, in sweats and a T-shirt.  Andrews told him to get in the shower, but Garcia refused to do so.  Cooper and Andrews were in the kitchen with Garcia, and Andrews punched him in the chest a couple of times, before throwing Garcia out the back door.

Rufus Tindall testified that he had spoken with petitioner about this case while they were in the county jail together.  Petitioner admitted that he assaulted Garcia, but described it as "like a one-on-one thing."  Petitioner told Tindall that all he did was hit the victim, but that he did not know about the assault with the broom and the bottle because that took place in the basement, and he had not been there in the basement when these events occurred.

Corrections Officer Perez was with petitioner on March 7, 2001, when a nurse conducted a court-ordered AIDS test.  Petitioner asked why he was being tested, and the nurse explained to him that it was because this was a sexual case.  Petitioner then asked the nurse, "if sticking a broom up someone's ass was considered sexual assault," and was told that it was.

Reynaldo ("Ray") Urquizo testified for the defense.  Urquizo was at the party that night. At the party, he saw petitioner go into the basement one time, to talk to "Jake", but testified that Garcia was in the kitchen with the witness at that point.  Later, Urquizo saw petitioner strike Garcia with a pistol and heard the gun go off.  Urquizo witnessed other people hit and kick Garcia and kick him down the stairs, but claimed that Petitioner was not one of them.

Petitioner testified in his own behalf.  Petitioner was informed by a Joe Pena that Garcia was threatening to get a gun and shoot all the "niggers" in the house.  Petitioner went into the kitchen and confronted Garcia about this threat.  When Garcia responded that he was going to shoot petitioner, petitioner hit Garcia with the gun, and Garcia fell to the floor.  Petitioner then

6

fired one shot into the floor.  Petitioner gave the gun to Andrews, and went to the store with

Urquizo and Rosas for cigarettes and some more liquor.  Petitioner testified that when he

returned, he went down into the basement and discovered Andrews sticking a broom into

Garcia's rectum.  Petitioner ordered Andrews to stop assaulting Garcia.  The men picked up

Garcia and put him on a mattress and covered him up.  Petitioner told Garcia to come upstairs

and shower and go home when he got himself together.  Petitioner did not realize how badly

injured Garcia was, albeit he could see that he was bleeding.  Petitioner denied sexually

assaulting or beating Garcia in any way.  Petitioner also denied throwing Garcia into the

basement.  Petitioner admitted that when he was initially interviewed by Detective LaBarr on

January 29, 2001, he did not tell the detective that he hit Garcia with a pistol.

Petitioner's conviction was affirmed on appeal. *People v. Williams,* 238427

(Mich.Ct.App. June 17, 2003)(Neff, J. concurring); *lv. den.* 469 Mich. 1019; 677 N.W. 2d 29

(2004)(Cavanagh, J. would grant leave to appeal).

On September 10, 2004, petitioner filed a post-conviction motion for relief from

judgment pursuant to M.C.R. 6.500, *et. seq.,* with the state trial court.  The Lenawee County

Circuit Court denied petitioner's motion on September 15, 2004. *People v. Williams,* 01-9222-

FC (Lenawee County Circuit Court, September 15, 2004).

On or about February 16, 2005, petitioner filed the instant petition for writ of habeas

corpus with this Court.  On December 21, 2005, this Court held the petition in abeyance and

administratively closed the case while petitioner's post-conviction appeal remained pending in

the Michigan appellate courts. *Williams v. Bouchard,* No. 2005 WL 3502173 (E.D. Mich.

December 21, 2005).  The Michigan appellate courts ultimately denied petitioner's post-

7

conviction appeal. *People v. Williams,* No. 265091 (Mich.Ct.App. April 11, 2006); *lv. den.* 477 Mich. 971; 725 N.W. 2d 47 (2006).

On May 29, 2007, this Court reinstated the petition for writ of habeas corpus and permitted petitioner to amend his petition to include the claims that he had raised for the first time in his post-conviction motion for relief from judgment. *Williams v. Bouchard,* No. 2007 WL 1563646 (E.D. Mich. May 29, 2007).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. The prosecutor failed to prove the elements of forcible confinement kidnapping beyond a reasonable doubt.

II. Where Jason Elmore had reasonable expectation of receiving lenient treatment for his testimony, the prosecutor violated Petitioner's rights to due process by leading the jury to believe that Elmore's sole motivation was to seek justice.

III. The failure to give a special cautionary instruction concerning Elmore's testimony was reversible error; defense counsel's failure to request the instruction constituted ineffective assistance.

IV. Where Petitioner was sentenced on the basis of erroneously scored guidelines, without objection, his rights to due process and to the effective assistance of counsel at sentencing were violated.

V. The prosecution and trial court's failure to provide Petitioner with felony (LEIN) information regarding prosecution witness, Sara Beltran, operated to deprive Petitioner of a fair trial, protected under the U.S. Const. Am. V, VI, and XIV.

VI. Trial counsel failure to ensure that felony (LEIN) information of the prosecution's "KEY" witness, Sara Beltran, was produced at trial, denied Petitioner of effective assistance of counsel, in violation of the Sixth Amendment.

VII. Petitioner was denied effective assistance of appellate counsel on appeal, when counsel failed to raise the denial of discovery materials, prosecutorial misconduct and effective assistance of counsel on appeal, denied petitioner effective assistance of appellate counsel, violating the Sixth Amendment.

VIII.  Petitioner is denied the substantial right to access to courts, when the court

8

of appeals denied the motion to remand, predicated upon the Ex Parte affidavit submitted therewith, U.S. Const. Am. I, XIV.

IX. Petitioner is denied the substantive right to access to courts, in regards to supplemental claims maturing after judgment was entered, propered [sic] in the interim of the appellate court denying delayed application for leave to appeal, U.S. Const. Am. I, XIV.

X. Petitioner is denied adequate notice of the trial court's "recharacterization" of a pro-per "motion to correct the pre-sentence report" which prejudiced prisoner's classification; adversely effecting the course of appellate process, U.S. Const. Am. I, XIV.

XI. Petitioner is denied substantive right to an impartial judge, where the trial judge had actual or apparent knowledge of an evidentiary dispute of a plea-agreement with his spouse, manifesting by the remand ordered post-verdict & judgment, U.S. Const. Am. I, XIV.

XII. Where Petitioner was charged with a "specific intent crime and intoxication was sufficient evidence to warrant sua sponte incapacitated instructions for the prosecution on this evidence the failure to instruct the jury that intoxication "negatives" the "specific intent" violated due process and the right to a properly instructed jury, U.S. Const. Am. VI, XIV.

## II.    STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
>  A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  ANALYSIS

### A.  Claim # 1.  The sufficiency of evidence claim.

Petitioner first contends that the prosecution failed to present sufficient evidence to prove the elements of kidnapping beyond a reasonable doubt.

In rejecting this claim, the Michigan Court of Appeals concluded that the prosecutor provided sufficient evidence to support petitioner's conviction for kidnapping.  The court noted that a witness had testified that it was petitioner who told the other participants to take the victim to the basement.  If petitioner had intended to only assault the victim, the Michigan Court of Appeals reasoned that he could have continued to do so in the kitchen.  The Michigan Court of Appeals concluded that the victim's "forcible confinement to the basement provided sufficient evidence from which a jury could have found asportation incidental exclusively to kidnapping." *Williams,* Slip. Op. at * 2.  The Michigan Court of Appeals further concluded that moving the victim to the basement added greater dangers, increased the risk of harm, and made his escape less likely. *Id.*

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

10

doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). A habeas court does not substitute its own judgment for that of the finder of fact. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003).

Petitioner was convicted of kidnapping under the theory that he forcibly confined Mr. Garcia against his will.  To convict a defendant of kidnapping under a forcible confinement theory, the prosecutor must prove four elements beyond reasonable doubt:

> (1) a forcible confinement of another within state;
> (2) done willfully, maliciously, and without lawful authority;
> (3) against the will of person confined or imprisoned; and,
> (4) an asportation of victim which is not merely incidental to an underlying crime, unless the underlying crime involves murder, extortion, or taking a hostage.
> *People v. Wesley,* 421 Mich. 375, 388; 365 N.W. 2d 692 (1984).

As an initial matter, this Court notes that petitioner was originally charged with assault with intent to commit murder, although the jury found petitioner guilty of the lesser included offense of assault with intent to do great bodily harm.  Because the crime of assault with intent to commit murder "is certainly a crime *involving* murder", any movement incidental to the crime of assault with intent to commit murder is sufficient asportation to support a conviction of forcible confinement kidnapping. *Wesley,* 421 Mich. at 396-97(emphasis original).  In light of the fact that petitioner was charged with assault with intent to commit murder, the movement of Garcia in the course of that assault was sufficient asportation to support petitioner's kidnapping conviction.

In addition, if the movement of the victim adds a greater danger or threat to the victim,

that is a factor in considering whether the movement adequately constituted the necessary legal asportation to sustain a kidnapping conviction. *People v. Adams*, 389 Mich. 222, 238; 205 NW2d 415 (1973). In the present case, a rational trier of fact could have found that the movement of Garcia into the basement placed him in greater danger and was therefore not incidental to the initial assault in the kitchen. *See e.g. People v. Jaffray,* 445 Mich. 287, 299, n. 22; 519 N.W.2d 108 (1994)(victim's movement to basement and being tied to a poll sufficient to establish element of asportation). In light of the fact that the evidence, when viewed in a light most favorable to the prosecution, established that the victim's movement to the basement was not merely incidental to the assault, the Michigan Court of Appeals' determination that there was sufficient evidence of asportation to support petitioner's kidnapping conviction was a reasonable determination of facts in light of evidence presented in state court proceeding, and thus does not warrant federal habeas relief. *See Byrd v. Tessmer,* 82 Fed. Appx. 147, 151 (6th Cir. 2003).

To the extent that petitioner challenges the credibility of the witnesses, he would not be entitled to habeas relief. A court that reviews a sufficiency of evidence claim does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*

12

Petitioner is not entitled to relief on his first claim.

**B.  Claim # 2.  The prosecutorial misconduct claim.**

Petitioner next contends that the prosecutor failed to disclose to the jury that Jason Elmore was testifying because he had a reasonable expectation of obtaining lenient treatment from the prosecutor in exchange for his testimony.  In support of his claim, petitioner points to the fact that subsequent to petitioner's conviction, Elmore was permitted to plead guilty to a reduced misdemeanor charge of aggravated assault.

In rejecting this claim, a majority of the Michigan Court of Appeals concluded that there was no support on the record that any plea agreement existed between the prosecutor and Elmore. *Williams,* Slip. Op. at * 3.  Elmore, his trial counsel, and the prosecutor repeatedly denied the existence of any plea agreement at both the preliminary examination and at trial.  Specifically, when at the conclusion of the preliminary examination defense counsel inquired of the prosecutor and Elmore's counsel whether a plea agreement existed, the examining magistrate indicated on the record that there was no such agreement. *Id.*  Further, the Michigan Court of Appeals noted that the jury was made aware of the pending charge against Elmore and petitioner extensively cross-examined Elmore concerning his motivation and credibility for testifying, including the possibility of future plea bargains.  In light of counsel's "thorough questioning of Elmore, and the closing argument by defense counsel, it was clearly brought to the jury's attention that Elmore may have had a motive to testify as he did." *Id.* at * 3-4.  Lastly, the Michigan Court of Appeals concluded that no miscarriage of justice occured in light of the fact that Elmore's testimony was not the sole basis for petitioner's conviction. *Id.* At * 4.

In her concurring opinion, Judge Neff believed that the evidence established that Elmore

13

and/or his attorney had engaged in plea negotiations from which Elmore had a reasonable expectation of leniency which should have been disclosed.  However, Judge Neff agreed with the majority for the reasons stated in their opinion that the failure to disclose Elmore's expectations of leniency did not result in a miscarriage of justice. *Id.*

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false", rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,* 209 F. 3d 486, 517-518 (6th Cir. 2000).  A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

"It is well established that an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under *Brady*[*v. Maryland*]". *Bell v. Bell*, 512 F. 3d 223, 233 (6th Cir. 2008); *cert. den.* 129 S. Ct. 114 (2008)(citing *Giglio*, 405 U.S. at 154-55).  "The existence of a less formal, unwritten or tacit agreement is also subject to

14

*Brady's* disclosure mandate." *Id.*  However, the mere fact that a witness desired favorable treatment in return for his testimony, does not, standing alone, demonstrate the existence of an implied agreement with the prosecutor. *Id.*

In the present case, petitioner has failed to establish that Elmore had an express or implied agreement with the prosecutor to testify against petitioner.  The prosecutor, Elmore's defense counsel, and Elmore repeatedly denied that any such agreement existed and the state district court judge made such a finding at the time of the preliminary examination.  The fact that the prosecutor subsequent to petitioner's trial offered to let Elmore to plead guilty to a reduced misdemeanor charge is insufficient in and of itself to establish that the prosecutor had entered into an agreement with Elmore prior to trial in exchange for his testimony. *Bell,* 512 F. 3d at 233-34.  In the absence of any evidence to the contrary, this Court could just as reasonably conclude that the result in Elmore's case "merely reflects the standard operations of the criminal justice system, in which the state offers leniency to defendants in exchange for their pleas of guilty." *Id.* at 234.  It is simply " not the case that, if the government chooses to provide assistance to a witness following a trial, a court must necessarily infer a preexisting deal subject to disclosure under *Brady*." *Id.*  Because petitioner has not adequately demonstrated the existence of an understanding between the prosecutor and Elmore concerning his testimony at petitioner's trial, the prosecutor did not suppress any evidence that needed to be disclosed to petitioner. *Id.*

Moreover, the prosecutor's failure to disclose any alleged plea bargain in which Elmore agreed to testify against petitioner was not material to petitioner's conviction, where the jury was made fully aware, through cross-examination and defense counsel's closing argument, of

Elmore's motivation for testifying, *i.e.*, his hope of obtaining favorable treatment in his own case. *See Williams v. Coyle,* 260 F. 3d 684, 708 (6th Cir. 2001); *See also Pearl v. Cason*, 219 F. Supp. 2d 820, 827 (E.D. Mich. 2002).

Finally, any error in this case was harmless, in light of the overwhelming evidence against petitioner in this case. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Elmore was not the only witness who testified against petitioner. Sara Beltran and John Madison also testified that petitioner had assaulted the victim in the kitchen with the handgun and had then taken him down into the basement with Cooper and Andrews. Petitioner himself admitted to assaulting the victim with the handgun in the kitchen. In light of the overwhelming evidence against petitioner in this case, the failure to disclose any tacit agreement between the prosecutor and Elmore was harmless error at worst. *See e.g. Wesener v. Straub,* 110 Fed.Appx. 614, 625-26 (6th Cir. 2004).

**C.   Claim # 3.   The jury instruction/ineffective assistance of counsel claim.**

Petitioner next claims his trial counsel was ineffective in failing to request a cautionary accomplice instruction regarding Elmore's testimony and that the failure of the trial court to give such an instruction was reversible error.

In rejecting this claim, the Michigan Court of Appeals noted that the jury heard testimony that Elmore was facing an assault with intent to murder charge, so it was aware that Elmore was an accomplice. Additionally, Elmore's credibility was vigorously challenged.

Finally, the jury was instructed that it was free to believe all, none, or part of Elmore's testimony, and the general witness instructions instructed that the jury should consider a witness' reasons for testifying, as well as any bias or personal interest of the witness. *Williams,* Slip. Op. at * 5.

An erroneous jury instruction warrants habeas corpus relief only where the instruction " 'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right'". *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).

The Sixth Circuit has held, even on direct appeals from federal criminal trials, that a trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible error, so long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. *See United States v. Carr*, 5 F. 3d 986, 992 (6th Cir. 1993); *see also United States v. Bucheit,* 134 Fed. Appx. 842, 859 (6th Cir. 2005)(failure to give accomplice instruction not reversible error); *United States v. Allgood*, 45 Fed. Appx. 407, 412 (6th Cir. 2002)("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be 'properly cautioned.'"); *Scott v. Mitchell,* 209 F. 3d 854, 883 (6th Cir. 2000)("We have since

17

followed *Carr* in not requiring accomplice instructions as a general matter").

Federal habeas review of jury instruction claims arising out of a state court prosecution is even more deferential than direct review by a federal appellate court of a federal criminal conviction. In this case, the state trial court's failure to specifically instruct the jury regarding the credibility of accomplice witnesses did not violate petitioner's right to due process, in light of the fact that the general instructions on witness credibility alerted the jury to the various considerations that it should take into account in weighing testimony, giving the jury an ample basis for rejecting the testimony of the accomplice witness if it had chosen to do so. *See Latimer v. Burt,* 98 Fed. Appx. 427, 432-33 (6th Cir. 2004).

The Court will reject petitioner's related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

As mentioned when addressing petitioner's second claim, *supra,* Jason Elmore was not the only witness to this crime. Sara Beltran and John Madison also testified to petitioner's involvement in the kidnapping and assault. Petitioner himself admitted to assaulting the victim with a handgun, although denying any involvement in the assault in the basement. Given the overwhelming evidence of petitioner's participation in these crimes, even if the failure of counsel to request an instruction on accomplice testimony was deficient, there was no showing

18

of reasonable probability that but for the error, the result of the trial would have been different; therefore, petitioner is not entitled to habeas corpus relief on his ineffective assistance of counsel claim. *See Krist v Foltz*, 804 F. 2d 944, 947 (6ᵗʰ Cir. 1986).

 **D.  Claim # 4.  The sentencing/ineffective assistance of counsel claim.**

 In his fourth claim, petitioner contends that his sentence of 562 months to 960 months imprisonment was disproportionate, that one of his sentencing guidelines variables was incorrectly scored, and that counsel was ineffective for failing to object to the scoring of the guildelines variables.

 In the present case, petitioner's sentence was within the statutory limits for the offense of kidnapping.  A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment either. *Austin v. Jackson*, 213 F. 3d 298, 302 (6ᵗʰ Cir. 2000); *Johnson v. Smith,* 219 F. Supp. 2d at 884.

 The U.S. Constitution does not require that sentences be proportionate.  In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the U.S. Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence.  The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. *Harmelin,* 501 U.S. at 1001.

 Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).  Federal courts will therefore not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 823 (E.D.

19

Mich. 2001)(citing *United States v. Thomas,* 49 F. 3d 253, 260-61 (6th Cir. 1995)). A claim that a sentence is imposed in violation of Michigan's sentencing law does not state a claim for relief in a habeas proceeding where there is no claim that the sentence violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Id.* Petitioner's claim that his sentence is disproportionate under Michigan law thus would not state a claim upon which habeas relief can be granted. *Whitfield v. Martin,* 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).

In this case, because petitioner's sentence falls within the statutory limits, petitioner is not entitled to habeas relief. *Robinson v. Stegall,* 157 F. Supp. 2d at 823. Moreover, because petitioner has failed to claim that the sentence imposed violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, he has failed to state a claim upon which habeas relief can be granted. *Id.*

More importantly, to the extent that petitioner is claiming that his sentence violates the Michigan state sentencing guidelines, his claim is not cognizable in a habeas proceeding because it is a state law claim. *See Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Robinson*, 157 F. Supp. 2d at 823. "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Petitioner's claim that the state trial court improperly departed above the sentencing guidelines range would not entitle him to habeas relief. *See Drew v. Tessmer,* 195 F. Supp. 2d 887, 889-90 (E.D. Mich. 2001); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999).

Petitioner further claims that counsel was ineffective for failing to object to Prior Record Variable (PRV) 7 because it included petitioner's felony-firearm conviction, which should not

have been scored under Michigan law.  Although the Supreme Court has never expressly

extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that

context. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988).

In rejecting this claim, the Michigan Court of Appeals noted that PRV 7 had been

incorrectly scored, but noted that the trial court judge stated on the record numerous reasons for

departing above the sentencing guidelines due to the brutality of the crimes and petitioner's

involvement in initiating the assaults and preventing others from leaving the scene.

Consequently, defense counsel was not ineffective in failing to object to the scoring error,

because petitioner failed to establish that, absent counsel's error, the result of the proceedings

would have been different. *Williams,* Slip. Op. At * 5.

In light of the fact that the trial court would have departed above the sentencing

guidelines range and imposed the same sentence even if counsel had objected to the scoring of

the guidelines variable, counsel's failure to do so did not prejudice petitioner, so as to entitle

petitioner to relief on his ineffective assistance of counsel claim. *See U.S. v. Kirkham,* 295 Fed.

Appx. 910, 913 (10th Cir. 2008).

**E.  Claims # 5-12.  The procedurally defaulted claims.**

Respondent contends that petitioner's remaining claims are procedurally defaulted,

because petitioner raised these claims for the first time in his post-conviction motion and failed

to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to have raised these

claims in his appeal of right.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which could have

been raised on direct appeal, absent a showing of good cause for the failure to raise such
grounds previously and actual prejudice resulting therefrom.

     Petitioner raised his remaining claims in his post-conviction motion for relief from
judgment.  This Court notes that the trial court denied the motion on the ground that the issues
presented by petitioner were the same ones previously ruled on by the trial court or the
Michigan Court of Appeals. *People v. Williams,* 01-9222-FC (Lenawee County Circuit Court,
September 15, 2004).  The Michigan appellate courts denied petitioner leave to appeal "for
failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v.
Williams,* No. 265091 (Mich.Ct.App. April 11, 2006); *lv. den.* 477 Mich. 971; 725 N.W. 2d 47
(2006).

     The question for this Court is whether petitioner's remaining claims should be
procedurally defaulted on the basis of M.C.R. 6.508(D)(3), in light of the fact that the trial court
appeared to erroneously deny petitioner's post-conviction claims on the ground that they had
previously been raised before either the trial court or the Michigan Court of Appeals.

     M.C.R. 6.508(D)(2) indicates that a court in Michigan should not grant post-conviction
relief if the post-conviction motion "alleges grounds for relief which were decided against the
defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes
that a retroactive change in the law has undermined the prior decision[;]" M.C.R. 6.508(D)(2)
is essentially a *res judicata* or law of the case rule, which prevents the relitigation of claims in a
post-conviction motion which have already been decided adversely against a defendant in a
prior appeal.

     The trial court's erroneous invocation of 6.508(D)(2) to deny petitioner post-conviction

relief, however, does not preclude a finding that petitioner's remaining claims are procedurally defaulted pursuant to 6.508(D)(3) for several reasons. First, in his seventh claim, petitioner alleges that appellate counsel was ineffective for failing to raise his remaining claims on his direct appeal in order to establish cause for failing to raise these claims on his direct appeal, as required by M.C.R. 6.508(D)(3). Secondly, in his post-conviction applications for leave to appeal to the Michigan Court of Appeals and the Michigan Supreme Court, petitioner argued to the Michigan appellate courts that the trial court incorrectly rejected what now make up petitioner's remaining claims on the mistaken assumption that they had been raised on petitioner's direct appeal, when they were, in fact, being raised for the first time on petitioner's post-conviction motion. Finally, the Michigan appellate courts denied petitioner's post-conviction appeal pursuant to 6.508(D), after having been apprised by petitioner in his post-conviction appeals that these claims had not been raised on his appeal of right.

In light of the fact that petitioner concedes in his habeas petition that his remaining claims had not been presented to the Michigan appellate courts on direct review, as well as the fact that petitioner brought up the fact before the Michigan courts in his post-conviction pleadings that these remaining claims had not previously been raised before on direct review so as to persuade them to grant him post-conviction relief, any erroneous invocation of the provisions of M.C.R. 6.508(D)(2) by the trial court to deny petitioner's post-conviction motion would not prevent this Court from procedurally defaulting petitioner's remaining claims based on petitioner's failure to comply with the provisions of M.C.R. 6.508(D)(3). *See Hicks v. Straub,* 377 F. 3d 538, 552, n. 14 (6th Cir. 2004). Furthermore, the Michigan appellate courts' invocation of 6.508(D) to deny petitioner post-conviction relief was sufficient, under these

circumstances, to constitute a procedural default of petitioner's claims pursuant to 6.508(D)(3).

*Id.* at 557 *(citing Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000)).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S.

24

745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

> *Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536(*quoting Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by failing to raise petitioner's remaining claims on his direct appeal.  Appellate counsel, an attorney for the State Appellate Defender Office, filed a

motion to remand the case to the trial court for an evidentiary hearing and a forty page brief in support of the motion to remand.  Appellate counsel also filed a fifty page brief on appeal, in which she raised what now make up petitioner's first four claims. [2]  Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable.  Moreover, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise his remaining claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

Finally, to the extent that petitioner is raising his ineffective assistance of appellate counsel claim as an independent ground for relief, he is not entitled to the issuance of a writ of habeas corpus.  First, as mentioned above, petitioner has failed to show that appellate counsel was deficient in failing to present the omitted claims on his appeal of right.

Moreover, petitioner is unable to show that he was prejudiced by his appellate counsel's failure to raise these claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise these claims on petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943.

---

[2] *See* This Court Dkt. # 10.

26

In the present case, petitioner has offered no reasons for the Court to excuse the default of his claims.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred.  Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Malcum,* 276 F. Supp. 2d at 677. Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review his claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d at 882.

Lastly, petitioner's claims that the Michigan courts wrongfully denied him post-conviction relief on his claims are non-cognizable.  This Court notes that "[t]he Sixth Circuit consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007).  Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001).  The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)).  Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F. 2d 245, 246 (6th Cir. 1986)*(quoting Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).  "A due process claim related to collateral

27

post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ...
release or a reduction in ... time to be served or in any other way affect his detention because we
would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F. 3d at
853 (*quoting Kirby*, 794 F. 2d at 247).  Thus, the "'scope of the writ'" does not encompass a "
'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Cress*, 484
F. 3d at 853 (*quoting Kirby*, 794 F. 2d at 248).  "[T]he writ is not the proper means to challenge
collateral matters as opposed to the underlying state conviction giving rise to the prisoner's
incarceration." *Id.* (internal quotations omitted).

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a
certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must
make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To
demonstrate this denial, the applicant is required to show that reasonable jurists could debate
whether, or agree that, the petition should have been resolved in a different manner, or that the
issues presented were adequate to deserve encouragement to proceed further. *Slack v.
McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's
constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists
would find the district court's assessment of the constitutional claims to be debatable or wrong.
*Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds
without reaching the prisoner's underlying constitutional claims, a certificate of appealability
should issue, and an appeal of the district court's order may be taken, if the petitioner shows
that jurists of reason would find it debatable whether the petitioner states a valid claim of the
denial of a constitutional right, and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885.   The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 15, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
September 15, 2009.

S/Denise Goodine
Case Manager